IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ILLINOIS UNION INSURANCE COMPANY, | § § § | CIVIL ACTION NO. |
| Plaintiff, | § § § | **ILLINOIS UNION INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |
| v. | § § | |
| TEVA PHARMACEUTICALS USA, INC., and TEVA PHARMACEUTICAL INDUSTRIES LTD. | § § § § § | (JURY TRIAL DEMANDED) |
| Defendants. | § | |

Plaintiff Illinois Union Insurance Company ("Illinois Union"), on behalf of itself and no other party, alleges and avers as follows:

**I.**

**PARTIES**

1. Plaintiff Illinois Union is, and at all times herein mentioned was, an insurance company incorporated under the laws of Illinois with its principal place of business in Illinois.

2. Illinois Union is informed and believes, and thereon alleges, that Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is and at all times pertinent to the present complaint was a Delaware corporation, having its principal place of business at 650 Cathill Road, Sellersville, Pennsylvania 18960 and its corporate headquarters at 1090 Horsham Road, North Wales, Pennsylvania 19454.

3. Illinois Union is informed and believes, and thereon alleges, that Defendant Teva Pharmaceutical Industries Ltd. ("Teva Industries") is and at all times pertinent to the present

1476821.1

complaint was an Israeli corporation having its principal place of business at 5 Basel St., P.O. Box. 3190, Petah Tiqva, 49131, Israel.

4. Upon information and belief, Teva USA is a wholly-owned subsidiary of Teva Industries, and the two have common officers and directors.

## II.

## JURISDICTION & VENUE

5. This complaint for declaratory relief is brought pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57, Federal Rules of Civil Procedure for the purposes of determining questions of actual controversy between the parties as hereinafter more fully set forth. The jurisdiction of this Court is based upon the diversity of citizenship under 28 U.S.C. § 1332 between Plaintiff, Illinois Union, an Illinois company, and Defendants Teva USA and Teva Industries, citizens of Pennsylvania and Israel, respectively. The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs.

6. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the policy was issued to a Pennsylvania insured, under Pennsylvania insurance regulations, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.

## THE POLICY

7. On or about June 1, 2002, Illinois Union issued to Teva USA Excess Liability Insurance Policy No. XEO G21642903, effective from June 1, 2002 to June 1, 2003 (the "Excess Policy"). At the time of its inception, the Excess Policy, with total limits of liability of $5 million, was excess of Generic Products Patent Infringement Liability Insurance Policy No. 27372.1.1, with total underlying limits of $100 million, and excess of a $15 million retention each claim, $75 million in the aggregate (the "First Primary Policy"). A true and correct copy of the Excess Policy is attached as Exhibit "A" and is incorporated by reference herein. The Excess Policy is one of several insurance policies on the first excess layer of coverage, which has total

limits for the layer of $100 million. Except as otherwise provided therein, the Excess Policy at the time of its inception generally followed form to the First Primary Policy, which covered certain types of patent infringement liability losses subject to its terms, limitations, conditions and endorsements. A true and correct copy of the First Primary Policy is attached as Exhibit "B" and is incorporated by reference herein.

8. By Endorsement Number 4 of the Excess Policy, effective June 1, 2003, the identity of the insured under the Excess Policy was amended to include both Teva Industries and Teva USA. Prior to this date, Teva USA was the only named Insured on the Excess Policy. Additionally, the policy period was amended to extend from June 1, 2002 to June 1, 2004.

9. By Endorsement Numbers 5, 6, 7, 10, 12, 13, and 14 of the Excess Policy, the policy period was successively amended to extend from June 1, 2002 to June 1, 2011.

10. By Endorsement Number 10 of the Excess Policy, effective June 1, 2007, the limits of the entire first excess layer of coverage were expanded to $200 million, although the limits of the Excess Policy remained at $5 million. Also effective June 1, 2007, the Excess Policy became excess of Generic Products Patent Infringement Excess Liability Insurance Policy No. 25631.3.18, with total underlying limits of $55 million, a $50 million retention each claim and in the aggregate, and another $15 million retention each claim, $75 million in the aggregate (the "2007/2008 Primary Policy"). A true and correct copy of the 2007/2008 Primary Policy is attached as Exhibit "C" and is incorporated by reference herein. The 2007/2008 Primary Policy, which contains only a few basic terms, incorporates the more complete policy wording of the prior year's policy incepting in 2006 (the "2006/2007 Primary Policy"). A true and correct copy of the 2006/2007 Primary Policy is attached as Exhibit "D" and is incorporated by reference herein.

11. Insuring Clauses A and B of the First Primary Policy and the 2007/2008 Primary Policy (collectively, the "Primary Policy") require that there be a "Claim [that] is first made against the Insured and reported in writing to SRI during the Policy Period." Similarly, Section (g) [Notice/Claim Reporting Provisions] under the "Conditions" section of the Primary Policy

states, in pertinent part: "The Insured shall, as a condition precedent to the availability of the rights provided under this Policy, give written notice to SRI as soon as practicable during the Policy Period (as defined in this Policy) of any Claim or Injunction claim made against the Insured."

12. Clause V. [GENERAL CONDITIONS] of the Excess Policy provides, in pertinent part, as follows:

> C. Notice: All notices under this policy shall be given as provided in the Followed Policy [the Primary Policy] and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations.
>
> D. Cooperation: The Insureds shall give the Insurer such information and cooperation as it may reasonably require.
>
> E. Claim Participation: The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the Underlying Limit has not been exhausted.

13. Item 7 of the Declarations to the Excess Policy states, in pertinent part, as follows:

> Notice to Insurer:    Director of Claims
>                       ACE Professional Risk Division
>                       140 Broadway
>                       40th Floor
>                       New York, NY 10005

14. Clause II.A. [LIMIT OF LIABILITY] of the Excess Policy provides, in pertinent part, as follows:

> It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after the insurers of the Underlying Policies [the Primary Policy] shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy.

15. Section (b) [Insured's duty to maintain quality of product clearance standards] under the "Conditions" section of the Primary Policy provides as follows:

> Notwithstanding anything in this Policy to the contrary, it shall be a condition precedent to any **Patent infringement** being deemed a **Covered infringement** under this Policy that the **Insured** shall not at any time

4

during the **Policy period**, diminish the quality of its company product clearance procedures and infringement search practices and shall at all times maintain, as though it were not insured, the same professional standards respecting the product clearance procedures and infringement search practices as were in effect prior to the **Inception** of this Policy and made part of the Application for this Policy.

16. Section (c) [Insured's duties to identify, to apply clearance procedures to and obtain independent legal opinions regarding Covered non-listed patents] under the "Conditions" section of the Primary Policy provides as follows:

> Notwithstanding anything in this Policy to the contrary, it shall be a condition precedent to any patent described in Definition j(1) through (5) being deemed a **Covered non-listed patent** under this Policy that the **Insured** shall, prior to marketing any product to which such patent may be relevant, (1) create a record of the research conducted demonstrating that the **Insured**, in attempting to identify such patent, followed its warranted search procedures as described in the Addendum to Representations and Warranties in Appendix B; and, (2) if the **Insured** identified such patent that the **Insured** followed its warranted product clearance procedures as described in the Addendum to Representations and Warranties in Appendix B; and, (3) if the information so obtained suggested that such non-listed patent was relevant to a product of the **Insured** for which an **ANDA** or **ANDS** is to be filed or is thereafter filed, obtain a legal opinion of non-infringement, invalidity or unenforceability from competent and reputable United States patent counsel as warranted by the **Insured**. The **Insured** agrees that failure to comply with the terms of this condition precedent will result in there being no coverage under this Policy for the Insured's infringement of the **Covered non-listed patent** in question.

17. Section (d) [WARRANTY BY INSURED] under the "Conditions" section of the Primary Policy provides as follows:

> The **Insured** by acceptance of this Policy warrants that the **Insured** complied with the **Insured's** product clearance and infringement search procedures as described and represented to SRI and made a part of the Application for this Policy for all products for which an **ANDA** or **ANDS** was filed since January 1, 1999 and for those products that have been used, manufactured, marketed, distributed, imported, sold or offered for sale as at the **Inception** date. The **Insured** further warrants that the Insured shall in future, prior to the commencement of any use, manufacture, marketing, distribution, importation, sales, or offering for sale of any **Covered product**, request and receive a legal opinion from one or more of the law firms it customarily engages on the issue of patent infringement, and that it shall not proceed to use, manufacture, market,

5

distribute, import, sell or offer for sale any **Covered product** for which it has received a legal opinion, oral or written, informing, advising or suggesting to the **Insured** that to use, manufacture, market, distribute, sell or offer to sell such product would likely entail patent infringement.

18. In Appendix B to the Primary Policy, Teva made a series of additional representations and warranties, including, *inter alia,* that "Teva's internal patent department will have completed an evaluation and review of the patent as it applies to the generic product under consideration."

## IV.

## UNDERLYING MATTER

19. On May 20, 2004, Wyeth and Altana Pharma AG ("Altana") filed an action in the United States District Court for the District of New Jersey, styled *Altana Pharma AG, et al. v. Teva Pharmaceuticals USA, Inc., et al.* This action was subsequently consolidated with four other actions filed in the United States District Court for the District of New Jersey by Wyeth and Altana in 2005, 2006 and 2008 against Teva Industries and Teva USA (this consolidated action is referenced herein as the "*Wyeth* action"). The claims department of ACE Professional Risk Division was not advised of the filing of any of these complaints at the time they were filed.

20. In the *Wyeth* action, plaintiffs allege a claim for patent infringement against Teva Industries and Teva USA (collectively, "Teva") in connection with United States Patent No. 4,758,579 ("the '579 patent") for pantoprazole sodium. Plaintiffs allege that Altana is the owner of the '579 patent and that Wyeth is the exclusive licensee of the '579 patent in the United States.

21. On May 31, 2007, Jason Kleinman of ACE USA Professional Risk sent an email to Paula Walkling of JLT Specialty Limited ("JLT"), Teva's insurance broker and an agent of Teva, asking: "Do you have a claims update for me?" Despite the fact that the *Wyeth* action had been filed three years prior, Walkling responded that "[t]here is no claims up-date as there have been no claims."

22. By Endorsement No. 10 of the Excess Policy, effective June 1, 2007, Teva warranted that "there have been no losses as of 1 June 2007 that would impair the Self-insured Retention."

23. Illinois Union is informed and believes, and based thereon alleges, that Teva's sole defense to liability in the *Wyeth* action was that the '579 patent was invalid—Teva did not dispute infringement to the extent the patent was valid. In April of 2010, the jury in the *Wyeth* action returned a verdict finding that Wyeth's patent was not invalid, and hence, that Teva was liable for patent infringement. As of the time this verdict was reached, the claims department of ACE Professional Risk Division had not been advised of the *Wyeth* action (in fact, Teva and its agents had expressly represented that there were no claims on the Excess Policy) and, thus, Illinois Union had no opportunity to defend or associate in the defense of the *Wyeth* action or take any other action to prevent the verdict against Teva or otherwise avoid or limit Teva's exposure.

24. As of June 1, 2011, the end of the policy period for the Excess Policy, Teva had not provided notice of the *Wyeth* action (or any other claim on the Excess Policy) to the claims department of ACE Professional Risk Division.

25. On August 31, 2011, over 16 months <u>after</u> a jury had found Teva liable in the *Wyeth* action and over seven years after the first complaint in the *Wyeth* action was filed, Clair Mitchell of JLT sent an email to the claims department of ACE Professional Risk Division (among others) for the first time alerting it of the *Wyeth* action, although little to no substantive information was provided. The claims department was also alerted in that same email to a Canadian action purportedly also involving pantoprazole sodium, styled *Janssen-Ortho Inc. and Daiichi Pharmaceutical Co., Ltd. v. Novopharm Ltd.* (the "Canadian action"), although again, little to no substantive information was provided.

26. By letter dated January 25, 2013, counsel for Illinois Union generally and specifically reserved rights under the policy and at law in connection with the *Wyeth* action,

including on the basis of untimely notice. A true and correct copy of the January 25, 2013 letter is attached as Exhibit "E" and is incorporated by reference herein.

27. Teva has not provided Illinois Union, the claims department of ACE Professional Risk Division, or any affiliated entity or division with the information and documentation relating to the *Wyeth* action that was requested by counsel for Illinois Union in the January 25, 2013 letter, including, but not limited to, the expert reports, all significant pleadings and motions, court orders, the jury verdict, and other documents relevant to Teva's liability and damages exposure arising from the *Wyeth* action. Teva has similarly not provided all necessary documents relating to its company product clearance procedures and infringement search practices, whether Teva's internal patent department completed an evaluation and review of the patent as it applies to the generic product then under consideration, and other documents required under the Conditions section of the Primary Policy. Virtually no information has been provided by Teva respecting the potentially related Canadian action.

28. Teva has requested that Illinois Union provide coverage under the Excess Policy for Teva's losses arising from the *Wyeth* action.

V.

**FIRST CAUSE OF ACTION**
**(FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR**
**COVERAGE IS PRECLUDED ON THE BASIS OF UNTIMELY NOTICE)**

29. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 28, inclusive, as though set forth in full.

30. Pursuant to Clause V.C. of the Excess Policy, Item 7 of the Declarations to the Excess Policy, Insuring Clauses A and B of the Primary Policy and Condition (g) of the Primary Policy, it is a condition precedent to coverage under the Excess Policy that Teva provide the claims department of ACE Professional Risk Division with notice of claim within the policy period.

8

31. Teva did not provide the claims department of ACE Professional Risk Division with notice of the *Wyeth* action or the Canadian action until August 31, 2011, four months after the expiration of the policy period, 16 months after a jury in the *Wyeth* action found Teva liable for patent infringement, and more than seven years after the first complaint in the *Wyeth* action was filed.

32. Illinois Union contends that notice of the *Wyeth* action and the Canadian action was not timely provided to Illinois Union's specified agent for notice, and thus, coverage under the Excess Policy is precluded for any loss or damage Teva has or may incur as a result of those or any related actions.

33. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

34. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

35. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

VI.

**SECOND CAUSE OF ACTION
(FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR
COVERAGE IS PRECLUDED ON THE BASIS OF ESTOPPEL)**

36. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 35, inclusive, as though set forth in full.

37. By email dated May 31, 2007, Teva's authorized agents represented that there have been no claims under the Excess Policy.

38. At the time this representation was made, Teva had been defending the *Wyeth* action for over three years.

39. Illinois Union is informed and believes, and based thereon alleges, that the representation that there were no claims was made in order to cause Illinois Union to agree to further extend the policy period of the Excess Policy, which at the time the representation was made, was set to expire on June 1, 2007.

40. Based on and in reliance upon the representation that there were no claims, Illinois Union agreed to successive endorsements extending the policy period through June 1, 2011.

41. Had Teva or its agents informed the claims department of ACE Professional Risk Division of the existence of these actions, Illinois Union would have had an opportunity to exercise its rights under the Excess Policy in connection with the defense of claims.

42. Had Teva or its agents informed the claims department of ACE Professional Risk Division of the existence of these actions, Illinois Union would also have had the opportunity to end the policy period on June 1, 2007 or negotiate a higher premium for the extension of the policy period.

43. Illinois Union contends that, as a result of the acts and events detailed above, Teva is estopped from obtaining coverage under the Excess Policy for any claims that had been made against Teva as of the time these representations were made, including the *Wyeth* action and the Canadian action.

44. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

45. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

46.     Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## VII.

## THIRD CAUSE OF ACTION
### (FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR COVERAGE IS PRECLUDED ON THE BASIS OF WAIVER)

47.     Illinois Union realleges and incorporates by reference herein paragraphs 1 through 46, inclusive, as though set forth in full.

48.     By email dated May 31, 2007, Teva's authorized agents represented that there have been no claims under the Excess Policy.

49.     Illinois Union contends that, as a result of the acts and events detailed above, Teva has waived any rights it may have otherwise had to obtain coverage under the Excess Policy for any claims that had been made against Teva as of the time this representation was made, including the *Wyeth* action and the Canadian action.

50.     Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

51.     An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

52.     Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## VIII.

## FOURTH CAUSE OF ACTION
## (FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR COVERAGE IS PRECLUDED BY TEVA'S BREACH OF THE CLAIM PARTICIPATION CLAUSE)

53. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 52, inclusive, as though set forth in full.

54. Clause V.E. [Claim Participation] of the Excess Policy provides that Illinois Union "shall have the right ... and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the Underlying Limit has not been exhausted."

55. Illinois Union contends that, by failing to provide notice to the claims department of ACE Professional Risk Division until August 31, 2011, after a jury had already found Teva liable for patent infringement, Teva breached its obligation under Clause V.E. to afford Illinois Union the right to effectively associate in the investigation, settlement or defense of the claim.

56. Illinois Union contends that Clause V.E. was further breached by Teva's refusing to provide the information and documents respecting the *Wyeth* action and the patent at issue that were requested by Illinois Union's counsel in advance of the damages phase of the trial in the *Wyeth* action.

57. Illinois Union contends that the aforementioned breaches are a bar to coverage under the Excess Policy for the *Wyeth* action.

58. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

59. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law

exists for resolution of this controversy.

60. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

IX.

**FIFTH CAUSE OF ACTION**
**(FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR COVERAGE IS PRECLUDED BY TEVA'S BREACH OF THE COOPERATION CLAUSE)**

61. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 60, inclusive, as though set forth in full.

62. Clause V.D. [Cooperation] of the Excess Policy provides that Teva "shall give the Insurer such information and cooperation as it may reasonably require."

63. Illinois Union contends that Clause V.D. was breached by Teva's refusing to provide the information and documents respecting the *Wyeth* action and the patent at issue that were requested by Illinois Union's counsel in advance of the damages phase of the trial in the *Wyeth* action.

64. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

65. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

66. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## X.

### SIXTH CAUSE OF ACTION
### (FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR COVERAGE IS PRECLUDED BY TEVA'S BREACH OF ITS AGREED DUTIES AND WARRANTIES)

67. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 66, inclusive, as though set forth in full.

68. Sections (b), (c), and (d) under the "Conditions" section of the Primary Policy and Appendix B attached to the Primary Policy set forth express duties and warranties agreed to by Teva as a condition precedent to coverage.

69. Teva has refused to provide all necessary documents establishing that these duties and warranties have been satisfied.

70. Illinois Union contends that Teva's refusal to provide those documents is a breach of those conditions, thereby precluding coverage under the Excess Policy in connection with the *Wyeth* action and the Canadian action.

71. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

72. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

73. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## XI.

## SEVENTH CAUSE OF ACTION
## (FOR DECLARATORY JUDGMENT THAT TEVA'S CLAIM FOR COVERAGE IS PRECLUDED DUE TO LACK OF UNDERLYING EXHAUSTION)

74. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 73, inclusive, as though set forth in full.

75. Clause II.A. of the Excess Policy provides that no coverage is afforded under the Excess Policy unless and until "the insurers of the Underlying Policies [the Primary Policy] shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy."

76. Illinois Union is informed and believes, and based thereon alleges, that the limits of the Primary Policy have not been fully paid in connection with any claim.

77. Teva has also not provided Illinois Union with information and documentation reflecting that it has paid the full amount of the uninsured retention in connection with this claim.

78. Illinois Union contends that the lack of underlying exhaustion precludes coverage under the Excess Policy.

79. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

80. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

81. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## XII.

## EIGHTH CAUSE OF ACTION
## (FOR DECLARATORY JUDGMENT REGARDING
## THE APPLICATION OF COINSURANCE)

82. Illinois Union realleges and incorporates by reference herein paragraphs 1 through 81, inclusive, as though set forth in full.

83. The Declarations of the Primary Policy, the Preamble of the Primary Policy, the section of the Primary Policy entitled "Limit of Indemnity," the section of the Primary Policy entitled "Coinsurance," and Endorsement No. 10 of the Excess Policy all provide that the limits of liability are reduced by a coinsurance percentage and/or "Insured's share" that is the responsibility of Teva.

84. In light of these provisions, Illinois Union contends that its liabilities under the Excess Policy in no circumstances would reach its full limits were there any coverage for the Claim.

85. Illinois Union is informed and believes, and based thereon alleges, that Teva disputes this contention and contends to the contrary.

86. An actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201-2202 with respect to the parties' rights and obligations under the Excess Policy. A judicial declaration is necessary so that the parties can ascertain their rights, duties and obligations under the Excess Policy. No other adequate or speedy remedy at law exists for resolution of this controversy.

87. Illinois Union has complied with all conditions precedent and all conditions subsequent such that it is entitled to seek this declaration from this Court.

## XIII.

## PRAYER

WHEREFORE, Illinois Union prays for judgment as follows:

a. An adjudication and declaration by the Court that Teva is not entitled to coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action because the claim was not timely noticed to Illinois Union's agent for notice;

b. An adjudication and declaration by the Court that Teva is estopped from pursuing coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action;

c. An adjudication and declaration by the Court that Teva has waived coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action;

d. An adjudication and declaration by the Court that Teva is not entitled to coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action as a result of its breach of the Claim Participation clause set forth in Clause V.E. of the Excess Policy;

e. An adjudication and declaration by the Court that Teva is not entitled to coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action as a result of its breach of the Cooperation clause set forth in Clause V.D. of the Excess Policy;

f. An adjudication and declaration by the Court that Teva is not entitled to coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action as a result of its breach of Sections (b), (c), and/or (d) under the "Conditions" section of the Primary Policy and/or Appendix B attached to the Primary Policy;

g. An adjudication and declaration by the Court that Teva is not entitled to coverage under the Excess Policy relating to the *Wyeth* action and the Canadian action due to lack of exhaustion of the limits of the Primary Policy and the self insured retention;

h. An adjudication and declaration by the Court that any coverage under the Excess Policy is subject to coinsurance and/or "Insured's share", reducing the available limits of liability under the Excess Policy;

i. The award of all necessary and reasonable attorneys' fees as may be allowed by law or in equity;

j. The award of pre-judgment or post-judgment interest at the highest rate allowed by law;

k. The award of all costs of court; and

l. All further relief to which Illinois Union may be entitled to at law or in equity.

Plaintiff requests a trial by jury on all issues for which it is so entitled.

PAUL H. HUMMER
JOSEPH C. MONAHAN
ATTY. I.D. Nos. 46413 and 87173
SAUL EWING, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
215-972-7777

**ATTORNEYS FOR PLAINTIFF
ILLINOIS UNION INSURANCE COMPANY**

OF COUNSEL:
RALPH A. GUIRGIS
SEAN R. SIMPSON
SEDGWICK
3 Park Plaza, 17th Floor
Irvine, CA 92614
*Pro Hac Vice Admission Pending*